1  MARC J. SCHNEIDER, State Bar No. 214609
     mschneider@sycr.com
2  TRAVIS P. BRENNAN, State Bar No. 238119
     tbrennan@sycr.com
3  STRADLING YOCCA CARLSON & RAUTH, P.C.
   660 Newport Center Drive, Suite 1600
4  Newport Beach, CA 92660-6422
   Telephone: (949) 725-4000
5  Facsimile: (949) 725-4100

6  Attorneys for Defendant
   ACACIA RESEARCH GROUP, LLC,
7  erroneously named as
   ACACIA PATENT ACQUISITION, LLC

8

**CONFORMED COPY**
**ORIGINAL FILED**
Superior Court of California
County of Los Angeles

**MAR 2 5 2015**

Sherri R. Carter, Executive Officer/Clerk
By: Glorietta Robinson, Deputy

9              **LOS ANGELES COUNTY SUPERIOR COURT**

10                   **STANLEY MOSK COURTHOUSE**

**BY FAX**

| | |
|---|---|
| 11  PROPHET PRODUCTIONS, a New York Corporation, | Case No. BC561469 |
| 12 | Hon. Dalila C. Lyons |
| | Dept. 20 |
| 13              Plaintiff, | |
| 14          vs. | **DECLARATION OF DOOYONG LEE SUPPORTING DEFENDANT'S REPLY IN SUPPORT OF MOTION TO TRANSFER** |
| 15  ACACIA PATENT ACQUISITION, LLC, a Delaware Limited Liability Company, and | **VENUE UNDER CODE OF CIV. PROC. §§ 396B, 397 AND REQUEST FOR ORDER** |
| 16  DOES 1 through 50, inclusive, | **THAT PLAINTIFF PAY DEFENDANT'S REASONABLE EXPENSES AND** |
| 17              Defendants. | **ATTORNEY'S FEES IN THE AMOUNT OF $9,515** |
| 18 | *[Filed concurrently with Reply Memorandum,* |
| 19 | *Declaration of Holly Hernandez, Declaration of Robert R. Brunelli, and Declaration of Travis P.* |
| 20 | *Brennan]* |
| 21 | Hearing: |
| | Date:      April 2, 2014 |
| 22 | Time:      8:30 a.m. |
| | Location: Dept. 20 |
| 23 | |
| 24 | Complaint Filed: October 22, 2014 |
| | Trial Date:      None Set |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

LITIOC/2114047v3/101023-0051

DECLARATION OF DOOYONG LEE

EXHIBIT A, p. 137

1    I, Dooyong Lee, declare:

2      1.     I am over the age of eighteen and not a party to this litigation. I have personal

3    knowledge of the following facts, and could testify competently to them if necessary.

4      2.     From January 2005 through December 2012, I was an executive of Acacia

5    Research Group, LLC ("ARG"), which was formerly called Acacia Patent Acquisition, LLC. I

6    was resident in ARG's Newport Beach, California office, and living in Orange County, from the

7    summer of 2005 until approximately November 2010. In or around November 2010, ARG

8    moved its offices to Frisco, Texas, and I moved to Texas to work in that office.

9      3.     On February 26, 2009, I entered into, on behalf of ARG, an Exclusive License

10   Agreement with Prophet Productions, LLC ("February 2009 Contract"). Attached hereto as

11   Exhibit A is a true and correct copy of a February 26, 2009 email from my former colleague,

12   Amy Person (who also worked in ARG's Newport Beach office at that time), to Elijah Chancelor

13   of Prophet Productions, LLC, with a cc to me, attaching an unsigned copy of the February 2009

14   Contract. The email asks that Mr. Chancelor sign and fax his signature to me at 949-480-8379.

15   That was a fax number for ARG's Newport Beach office at that time.

16     4.     Attached hereto as Exhibit B is an email I received later in the day on February

17   26, 2009 from Mr. Chancelor, attaching a copy of the February 2009 Contract that included his

18   signature on behalf of Prophet Productions, LLC. Attached hereto as Exhibit C is a true and

19   correct copy of an email I sent to Mr. Chancelor later the same day attaching a fully executed

20   copy of the February 2009 Contract with my signature on behalf of ARG.

21     5.     Attached hereto as Exhibit D is a true and correct copy of an email from me to

22   Mr. Chancelor dated February 26, 2009 attaching an acceptable completion notice letter signed

23   by me on behalf of ARG concerning the patent rights ARG was acquiring from Prophet

24   Productions, LLC under the February 2009 Contract.

25     6.     Exhibits A through D hereto are consistent with my belief that I was in Orange

26   County when I signed the February 2009 Contract on behalf of ARG on February 26, 2009. To

27   the best of my recollection, I was not anywhere other than Orange County on that day.

28     7.     I have reviewed the March 18, 2015 Declaration, and Exhibit 1 thereto, of Bobby

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

LITIOC/2114047v3/101023-0051

DECLARATION OF DOOYONG LEE

EXHIBIT A, p. 138

1  Aviv (whose name I am not familiar with), that was filed in this case. Exhibit 1 to that
2  declaration is an Exclusive License Agreement between A.R.C., Inc. and ARG. As the ARG
3  signature block on that document indicates, I signed that agreement on behalf of ARG on or
4  around November 5, 2008. I did not sign that agreement at the residence of David Aviv in Los
5  Angeles. I did not visit David Aviv in Los Angeles on that date, or at any other time. It was not
6  my practice to visit individual patent owners or inventors at their homes, and I do not recall ever
7  visiting an individual patent owner or inventor at his or her home while at ARG. To the best of
8  my recollection, I was not anywhere other than Orange County when I signed the agreement and
9  I was not in the same location as David Aviv when I did so.

10      8.      The copy of the agreement attached as Exhibit 1 to Bobby Aviv's March 18, 2015
11  declaration includes fax transmission information at the top of each page. Based on my general
12  recollection of receiving faxes at ARG's Newport Beach office, the transmission information
13  indicates that David Aviv faxed a copy of the agreement to ARG's Newport Beach office on
14  November 4, 2008 at 10:52 p.m., and that a copy of the agreement was faxed back to David Aviv
15  on November 5, 2008 at 11:46 a.m. That chronology is consistent with my frequent practice at
16  ARG of first sending the counter-party an unexecuted copy of a license agreement for that
17  party's signature, then counter-signing the agreement after receiving that party's signature and
18  sending a copy of the fully executed agreement back to the other party.

19      I declare under penalty of perjury under the laws of the State of California that the
20  foregoing is true and correct and that this declaration was executed this 25th day of March, 2015,
21  in Newport Beach, California.

22

23                                                          Dooyong Lee

24

25

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-2-

MOTION TO DISMISS

LITIOC/2114047v3/101023-0051

EXHIBIT A, p. 139

# EXHIBIT A

**Graziano, Jojo**

| | |
|---|---|
| **From:** | Amy Pearson <IMCEAEX-_O=ACACIA+20RESEARCH+20CORPORATION_OU=FIRST+20ADMINISTRATIVE+20GROUP_CN=RECIPIENTS_CN=AMAGAS@acaciares.com> |
| **Sent:** | Thursday, February 26, 2009 7:47 AM |
| **To:** | Elijah@prophetpro.com |
| **Cc:** | Dooyong Lee; Joseph Granara; Kimberly Bode |
| **Subject:** | New Agreement |
| **Attachments:** | Prophet Productions Exclusive License 022609.doc; Prophet Productions Exclusive License 022609a.pdf |

Elijah,

Please review the attached updated exclusive license.  If acceptable, please sign and fax to Dooyong (949-480-8379).

-Amy

## EXCLUSIVE LICENSE AGREEMENT

This Exclusive License Agreement (the "Agreement") is entered into by and between **PROPHET PRODUCTIONS, LLC** ("Licensor"), a New York limited liability company having a principal place of business at 206 East. 83rd. Street #2E, New York, NY 10028, and **ACACIA PATENT ACQUISITION LLC** ("APAC"), a Delaware limited liability company having a principal place of business at 500 Newport Center Drive, Suite 700, Newport Beach, CA 92660 (collectively referred to herein as the "Parties" and individually as "Party"). The effective date of this Agreement shall be the date on which the last Party executes this Agreement below (the "Effective Date").

### BACKGROUND

**WHEREAS**, Licensor is the sole and exclusive owner of U.S. Patent No(s). 6,028,626 (the "'626 Patent"), 5,666,157 (the "'157 Patent"), and all related patent applications, corresponding foreign patents and foreign patent applications, and all continuations, continuations in part, divisions, extensions, renewals, reissues and re-examinations relating to all inventions thereof, which are collectively referred to as the "Patents" (the "Patents"); and



Formatted: Font color: Black, Highlight

Formatted: Highlight

Formatted: Font color: Black, Highlight

EXHIBIT A, p. 142

EXHIBIT A, p. 143



V.03-05-2008                    Page 3 of 12

V.03-05-2008                    Page 4 of 12

EXHIBIT A, p. 146

5. **ENFORCEMENT OF PATENT RIGHTS**

    5.1.   <u>Good Faith</u>. Subject to the terms and conditions of this Agreement, APAC will use its good faith efforts to pursue licensing and enforcement of the Patents at its expense. APAC will attempt to negotiate licenses with companies that APAC believes may be infringing the Patents. Notwithstanding any of the foregoing, APAC may at any time elect not to pursue licensing or enforcement of any of the Patents if APAC determines, in its reasonable and sole discretion, that any such pursuit would be commercially unreasonable or otherwise unlawful or illegal.

EXHIBIT A, p. 147

5.2.    <u>Enforcement Litigation</u>.  APAC may, in its sole judgment, decide to institute enforcement actions against certain or all of the companies that APAC believes are infringing the Patents. APAC shall have the exclusive right to bring suit to enforce the Patents.





V.03-05-2008                    Page 8 of 12

8. **GOVERNING LAW AND CONSENT TO JURISDICTION**

8.1.   Choice of Laws.  This Agreement shall be governed by and construed under applicable federal law and the laws of the State of California, excluding any conflict of law provisions.  APAC and Licensor each irrevocably consent to the exclusive jurisdiction of any California state or federal court sitting in the Central District of California, over any suit, action or proceeding arising out of or relating to this Agreement.  APAC and Licensor hereby waive personal service of any summons, complaint, or other process in any action in any California state or federal court sitting in the Central District of California, and agree that all service thereof may be made by (i) certified or registered mail, return receipt requested, to the other Party's address identified in the opening paragraph of this Agreement; or (ii) by such other method authorized by the California Long Arm Statute.

9. **CONFIDENTIALITY**

9.1.   All information provided pursuant to this Agreement, including without limitation (but not including the existence of this Agreement), the terms of this Agreement, shall be regarded as confidential information ("Confidential Information").   The Parties agree that, other than as required by law, they shall not disclose any Confidential Information and shall use the Confidential Information only for the purposes set forth herein.  Either Party may disclose Confidential Information to its financial and legal advisors subject to confidentiality obligations at least as stringent as those provided in this Agreement. Licensor acknowledges that APAC's parent company, Acacia Research Corporation ("Acacia"), is a publicly traded company, and that Acacia may be required to publicly disclose the signing of this Agreement, as well as certain terms of the Agreement. Confidential Information shall not include information that:

V.03-05-2008                          Page 9 of 12

EXHIBIT A, p. 150

(a) was already known, otherwise than under an agreement of secrecy or non-use, at the time of its disclosure;

(b) has passed into the public domain prior to or after its disclosure, otherwise than through any act or omission attributable to principals, officers, employees, consultants or agents of the receiving Party, or

(c) was subsequently disclosed, otherwise than under an agreement of secrecy or non-use, by a third party that had not acquired the information under an obligation of confidentiality.

9.2.    Preservation of Privilege.    The Parties agree that they may disclose Confidential Information in furtherance of their common legal interest in exploring business opportunities involving the Patents, including litigation involving one or more of such Patents. Such Confidential Information may be subject to the attorney-client privilege, work product doctrine or other applicable privilege. The Parties understand and agree that it is their desire, intention and mutual understanding that the sharing of such Confidential Information is not intended to, and shall not, waive or diminish in any way the confidentiality of such material or its continued protection under the attorney-client privilege, work product doctrine or other applicable privilege.    All Confidential Information provided by a Party that is entitled to protection under the attorney-client privilege, work product doctrine or other applicable privilege shall remain entitled to such protection under these privileges, this Agreement, and under the joint defense doctrine. Nothing in this Section shall be interpreted to mean that a Party hereto would be prevented from using Confidential Information in a legal proceeding against the other Party hereto based upon a dispute arising out of this Agreement; provided that the other Party has been notified in advance of such use or disclosure and been afforded sufficient opportunity to seek and obtain confidential treatment by the court or other entity having jurisdiction over the matter at hand. Upon termination of this Agreement, APAC agrees to return to Licensor all documents, electronic or otherwise, relating to the Patents received from Licensor.

10.    **MISCELLANEOUS**

10.3.    Entire Agreement.    This Agreement constitutes the entire understanding of the parties with respect to its subject matter and may not be modified or amended, except in writing by the Parties. Nothing in this Agreement, whether expressed or implied, shall be construed to give any person (other than the Parties and their respective permitted successors and assigns), any legal or equitable right, remedy or claim under or in respect of this Agreement or any covenants, conditions or provisions contained herein, as a third party beneficiary or otherwise.

**IN WITNESS WHEREOF,** the Parties have executed this Agreement on the Effective Date.

<table>
<tr><td><strong>PROPHET PRODUCTIONS, LLC</strong></td><td><strong>ACACIA PATENT ACQUISITION LLC</strong></td></tr>
<tr><td>By:_____</td><td>By:_____</td></tr>
<tr><td>Print Name:_____</td><td>Print Name: Dooyong Lee</td></tr>
<tr><td>Title:_____</td><td>Title: Executive Vice President</td></tr>
<tr><td>Date:_____</td><td>Date:_____</td></tr>
</table>

V.03-05-2008                 Page 11 of 12



## EXCLUSIVE LICENSE AGREEMENT

This Exclusive License Agreement (the "Agreement") is entered into by and between **PROPHET PRODUCTIONS, LLC** ("Licensor"), a New York limited liability company having a principal place of business at 206 East. 83rd. Street #2E, New York, NY 10028, and **ACACIA PATENT ACQUISITION LLC** ("APAC"), a Delaware limited liability company having a principal place of business at 500 Newport Center Drive, Suite 700, Newport Beach, CA 92660 (collectively referred to herein as the "Parties" and individually as "Party"). The effective date of this Agreement shall be the date on which the last Party executes this Agreement below (the "Effective Date").

## BACKGROUND

**WHEREAS,** Licensor is the sole and exclusive owner of U.S. Patent No(s). 6,028,626 (the "'626 Patent"), 5,666,157 (the "'157 Patent"), and all related patent applications, corresponding foreign patents and foreign patent applications, and all continuations, continuations in part, divisions, extensions, renewals, reissues and re-examinations relating to all inventions thereof, which are collectively referred to as the "Patents" (the "Patents"); and



EXHIBIT A, p. 154

## 2. ROYALTIES AND OTHER PAYMENTS

2.1.    <u>Royalty Payment</u>. In consideration of the rights assigned to APAC hereunder and upon Acceptable Completion, as determined by APAC in its sole and absolute discretion, of the Investigation Period, APAC shall pay Licensor  a continuing royalty equal to          of the Net Proceeds (as defined below).

EXHIBIT A, p. 155



EXHIBIT A, p. 156



V.03-05-2008                              Page 4 of 12

EXHIBIT A, p. 158



5. **ENFORCEMENT OF PATENT RIGHTS**

5.1.    <u>Good Faith</u>.  Subject to the terms and conditions of this Agreement, APAC will use its good faith efforts to pursue licensing and enforcement of the Patents at its expense. APAC will attempt to negotiate licenses with companies that APAC believes may be infringing the Patents. Notwithstanding any of the foregoing, APAC may at any time elect not to pursue licensing or enforcement of any of the Patents if APAC determines, in its reasonable and sole discretion, that any such pursuit would be commercially unreasonable or otherwise unlawful or illegal.

5.2.    <u>Enforcement Litigation</u>.  APAC may, in its sole judgment, decide to institute enforcement actions against certain or all of the companies that APAC believes are infringing the Patents.  APAC shall have the exclusive right to bring suit to enforce the Patents.



EXHIBIT A, p. 159

EXHIBIT A, p. 160

V.03-05-2008                          Page 8 of 12

EXHIBIT A, p. 161

8. **GOVERNING LAW AND CONSENT TO JURISDICTION**

8.1. <u>Choice of Laws</u>. This Agreement shall be governed by and construed under applicable federal law and the laws of the State of California, excluding any conflict of law provisions. APAC and Licensor each irrevocably consent to the exclusive jurisdiction of any California state or federal court sitting in the Central District of California, over any suit, action or proceeding arising out of or relating to this Agreement. APAC and Licensor hereby waive personal service of any summons, complaint, or other process in any action in any California state or federal court sitting in the Central District of California, and agree that all service thereof may be made by (i) certified or registered mail, return receipt requested, to the other Party's address identified in the opening paragraph of this Agreement; or (ii) by such other method authorized by the California Long Arm Statute.

9. **CONFIDENTIALITY**

9.1. All information provided pursuant to this Agreement, including without limitation (but not including the existence of this Agreement), the terms of this Agreement, shall be regarded as confidential information ("Confidential Information"). The Parties agree that, other than as required by law, they shall not disclose any Confidential Information and shall use the Confidential Information only for the purposes set forth herein. Either Party may disclose Confidential Information to its financial and legal advisors subject to confidentiality obligations at least as stringent as those provided in this Agreement. Licensor acknowledges that APAC's parent company, Acacia Research Corporation ("Acacia"), is a publicly traded company, and that Acacia may be required to publicly disclose the signing of this Agreement, as well as certain terms of the Agreement. Confidential Information shall not include information that:

    (a) was already known, otherwise than under an agreement of secrecy or non-use, at the time of its disclosure; or

    (b) has passed into the public domain prior to or after its disclosure, otherwise than through any act or omission attributable to principals, officers, employees, consultants or agents of the receiving Party; or

(c) was subsequently disclosed, otherwise than under an agreement of secrecy or non-use, by a third party that had not acquired the information under an obligation of confidentiality.

9.2. <u>Preservation of Privilege.</u>   The Parties agree that they may disclose Confidential Information in furtherance of their common legal interest in exploring business opportunities involving the Patents, including litigation involving one or more of such Patents. Such Confidential Information may be subject to the attorney-client privilege, work product doctrine or other applicable privilege. The Parties understand and agree that it is their desire, intention and mutual understanding that the sharing of such Confidential Information is not intended to, and shall not, waive or diminish in any way the confidentiality of such material or its continued protection under the attorney-client privilege, work product doctrine or other applicable privilege.   All Confidential Information provided by a Party that is entitled to protection under the attorney-client privilege, work product doctrine or other applicable privilege shall remain entitled to such protection under these privileges, this Agreement, and under the joint defense doctrine. Nothing in this Section shall be interpreted to mean that a Party hereto would be prevented from using Confidential Information in a legal proceeding against the other Party hereto based upon a dispute arising out of this Agreement; provided that the other Party has been notified in advance of such use or disclosure and been afforded sufficient opportunity to seek and obtain confidential treatment by the court or other entity having jurisdiction over the matter at hand.   Upon termination of this Agreement, APAC agrees to return to Licensor all documents, electronic or otherwise, relating to the Patents received from Licensor.

## 10.   MISCELLANEOUS



10.3. <u>Entire Agreement.</u>   This Agreement constitutes the entire understanding of the parties with respect to its subject matter and may not be modified or amended, except in writing by the Parties. Nothing in this Agreement, whether expressed or implied, shall be construed to give any person (other than the Parties and their respective permitted successors and assigns), any legal or equitable right, remedy or claim under or in respect of this Agreement or any covenants, conditions or provisions contained herein, as a third party beneficiary or otherwise.



EXHIBIT A, p. 163

**IN WITNESS WHEREOF,** the Parties have executed this Agreement on the Effective Date.

**PROPHET PRODUCTIONS, LLC**               **ACACIA PATENT ACQUISITION LLC**

By:_____               By:_____

Print Name: _____               Print Name: Dooyong Lee

Title: _____               Title: Executive Vice President

Date:_____               Date:_____

EXHIBIT A, p. 164



# EXHIBIT B

**Graziano, Jojo**

| | |
|---|---|
| **From:** | Elijah Chancelor <Elijah@prophetpro.com> |
| **Sent:** | Thursday, February 26, 2009 9:33 AM |
| **To:** | Dooyong Lee |
| **Cc:** | David Aviv |
| **Subject:** | Signed License Agreement |
| **Attachments:** | SignedLicenseAgreement_ProphetProductions_2.26.09.pdf |

Hi Dooyong,

I'm having trouble sending faxes apparently, so I've scanned in and attached for you the new signed License Agreement.

Thanks again for all your patience and understanding.

By the way, my father sends his regards.

Elijah

_____

Elijah Chancelor | Web Producer
Prophet Productions, LLC
206 East. 83rd. Street #2E | New York, NY  10028
T/F:  212.472.7826  |  www.prophetpro.com

This message may contain information which is confidential or privileged.
If you are not the intended recipient, please advise the sender immediately
by reply e-mail and delete this message and any attachments without retaining a copy.

_____

## EXCLUSIVE LICENSE AGREEMENT

**This Exclusive License Agreement (the "Agreement")** is entered into by and between **PROPHET PRODUCTIONS, LLC** ("Licensor"), a New York limited liability company having a principal place of business at 206 East 83rd. Street #2E, New York, NY 10028, and **ACACIA PATENT ACQUISITION LLC** ("APAC"), a Delaware limited liability company having a principal place of business at 500 Newport Center Drive, Suite 700, Newport Beach, CA 92660 (collectively referred to herein as the "Parties" and individually as "Party"). The effective date of this Agreement shall be the date on which the last Party executes this Agreement below (the "Effective Date").

## BACKGROUND

**WHEREAS,** Licensor is the sole and exclusive owner of U.S. Patent No(s). 6,028,626 (the "'626 Patent"), 5,666,157 (the "'157 Patent"), and all related patent applications, corresponding foreign patents and foreign patent applications, and all continuations, continuations in part, divisions, extensions, renewals, reissues and re-examinations relating to all inventions thereof, which are collectively referred to as the "Patents" (the "Patents"); and

**WHEREAS,** Licensor is willing to grant worldwide exclusive license rights in the Patents to APAC and APAC in turn, desires to acquire all substantial rights in and to the Patents; and



V.03-05-2008                          Page 1 of 12



## 2. ROYALTIES AND OTHER PAYMENTS

2.1.    Royalty Payment. In consideration of the rights assigned to APAC hereunder and upon Acceptable Completion, as determined by APAC in its sole and absolute discretion, of the Investigation Period, APAC shall pay Licensor  a continuing royalty equal to ▮▮▮▮▮▮ of the Net Proceeds (as defined below).

EXHIBIT A, p. 169

V.03-05-2008                                    Page 3 of 12

EXHIBIT A, p. 170



V.03-05-2008                                    Page 4 of 12

EXHIBIT A, p. 171



Page 5 of 12

EXHIBIT A, p. 172

5. **ENFORCEMENT OF PATENT RIGHTS**

    5.1.    <u>Good Faith</u>.  Subject to the terms and conditions of this Agreement, APAC will use its good faith efforts to pursue licensing and enforcement of the Patents at its expense. APAC will attempt to negotiate licenses with companies that APAC believes may be infringing the Patents. Notwithstanding any of the foregoing, APAC may at any time elect not to pursue licensing or enforcement of any of the Patents if APAC determines, in its reasonable and sole discretion, that any such pursuit would be commercially unreasonable or otherwise unlawful or illegal.

    5.2.    <u>Enforcement Litigation</u>.  APAC may, in its sole judgment, decide to institute enforcement actions against certain or all of the companies that APAC believes are infringing the Patents. APAC shall have the exclusive right to bring suit to enforce the Patents.

EXHIBIT A, p. 173

V.03-05-2008                              Page 7 of 12

V.03-05-2008                              Page 8 of 12

EXHIBIT A, p. 175

## 8. GOVERNING LAW AND CONSENT TO JURISDICTION

8.1.   Choice of Laws.  This Agreement shall be governed by and construed under applicable federal law and the laws of the State of California, excluding any conflict of law provisions.  APAC and Licensor each irrevocably consent to the exclusive jurisdiction of any California state or federal court sitting in the Central District of California, over any suit, action or proceeding arising out of or relating to this Agreement. APAC and Licensor hereby waive personal service of any summons, complaint, or other process in any action in any California state or federal court sitting in the Central District of California, and agree that all service thereof may be made by (i) certified or registered mail, return receipt requested, to the other Party's address identified in the opening paragraph of this Agreement; or (ii) by such other method authorized by the California Long Arm Statute.

## 9. CONFIDENTIALITY

9.1.   All information provided pursuant to this Agreement, including without limitation (but not including the existence of this Agreement), the terms of this Agreement, shall be regarded as confidential information ("Confidential Information").   The Parties agree that, other than as required by law, they shall not disclose any Confidential Information and shall use the Confidential Information only for the purposes set forth herein.  Either Party may disclose Confidential Information to its financial and legal advisors subject to confidentiality obligations at least as stringent as those provided in this Agreement. Licensor acknowledges that APAC's parent company, Acacia Research Corporation ("Acacia"), is a publicly traded company, and that Acacia may be required to publicly disclose the signing of this Agreement, as well as certain terms of the Agreement. Confidential Information shall not include information that:

(a)   was already known, otherwise than under an agreement of secrecy or non-use, at the time of its disclosure;

(b)   has passed into the public domain prior to or after its disclosure, otherwise than through any act or omission attributable to principals, officers, employees, consultants or agents of the receiving Party; or

V.03-05-2008                              Page 9 of 12

(c)  was subsequently disclosed, otherwise than under an agreement of secrecy or non-use, by a third party that had not acquired the information under an obligation of confidentiality.

9.2.  <u>Preservation of Privilege.</u>   The Parties agree that they may disclose Confidential Information in furtherance of their common legal interest in exploring business opportunities involving the Patents, including litigation involving one or more of such Patents. Such Confidential Information may be subject to the attorney-client privilege, work product doctrine or other applicable privilege. The Parties understand and agree that it is their desire, intention and mutual understanding that the sharing of such Confidential Information is not intended to, and shall not, waive or diminish in any way the confidentiality of such material or its continued protection under the attorney-client privilege, work product doctrine or other applicable privilege.   All Confidential Information provided by a Party that is entitled to protection under the attorney-client privilege, work product doctrine or other applicable privilege shall remain entitled to such protection under these privileges, this Agreement, and under the joint defense doctrine. Nothing in this Section shall be interpreted to mean that a Party hereto would be prevented from using Confidential Information in a legal proceeding against the other Party hereto based upon a dispute arising out of this Agreement; provided that the other Party has been notified in advance of such use or disclosure and been afforded sufficient opportunity to seek and obtain confidential treatment by the court or other entity having jurisdiction over the matter at hand.  Upon termination of this Agreement, APAC agrees to return to Licensor all documents, electronic or otherwise, relating to the Patents received from Licensor.

10.  **MISCELLANEOUS**

10.3.  <u>Entire Agreement.</u>   This Agreement constitutes the entire understanding of the parties with respect to its subject matter and may not be modified or amended, except in writing by the Parties. Nothing in this Agreement, whether expressed or implied, shall be construed to give any person (other than the Parties and their respective permitted successors and assigns), any legal or equitable right, remedy or claim under or in respect of this Agreement or any covenants, conditions or provisions contained herein, as a third party beneficiary or otherwise.

**IN WITNESS WHEREOF,** the Parties have executed this Agreement on the Effective Date.

**PROPHET PRODUCTIONS, LLC**

By: _____

Print Name: Elijah Chancelor

Title: President

Date: 2/26/2009

**ACACIA PATENT ACQUISITION LLC**

By: _____

Print Name: Dooyong Lee

Title: Executive Vice President

Date: _____

V.03-05-2008                Page 11 of 12

# EXHIBIT C

**Graziano, Jojo**

| | |
|---|---|
| **From:** | Dooyong Lee <IMCEAEX-_O=ACACIA+20RESEARCH+20CORPORATION_OU=FIRST+20ADMINISTRATIVE+20GROUP_CN=RECIPIENTS_CN=DLEE@acaciares.com> |
| **Sent:** | Thursday, February 26, 2009 11:32 AM |
| **To:** | 'Elijah@prophetpro.com' |
| **Cc:** | Amy Pearson; Kimberly Bode |
| **Subject:** | FW: Scanned Docs |
| **Attachments:** | Document.pdf |

Elijah,

Attached is the countersigned new Exclusive License Agreement between APAC and Prophet. We will mail you two originals with my signature. Please sign both and return one for our records.

Regards,

_____

Dooyong Lee
Executive Vice President
Acacia Patent Acquisition LLC
500 Newport Center Drive, 7th floor
Newport Beach, CA 92660
Office: 949-480-8323
Fax: 949-480-8379
www.acaciatechnologies.com


-----Original Message-----
From: HP Scanner
Sent: Thursday, February 26, 2009 11:27 AM
To: Dooyong Lee
Subject: Scanned Docs


This document was digitally sent to you using an HP Digital Sending device.

# EXCLUSIVE LICENSE AGREEMENT

This Exclusive License Agreement (the "Agreement") is entered into by and between **PROPHET PRODUCTIONS, LLC** ("Licensor"), a New York limited liability company having a principal place of business at 206 East 83rd. Street #2E, New York, NY 10028, and **ACACIA PATENT ACQUISITION LLC** ("APAC"), a Delaware limited liability company having a principal place of business at 500 Newport Center Drive, Suite 700, Newport Beach, CA 92660 (collectively referred to herein as the "Parties" and individually as "Party"). The effective date of this Agreement shall be the date on which the last Party executes this Agreement below (the "Effective Date").

## BACKGROUND

**WHEREAS**, Licensor is the sole and exclusive owner of U.S. Patent No(s). 6,028,626 (the "'626 Patent"), 5,666,157 (the "'157 Patent"), and all related patent applications, corresponding foreign patents and foreign patent applications, and all continuations, continuations in part, divisions, extensions, renewals, reissues and re-examinations relating to all inventions thereof, which are collectively referred to as the "Patents" (the "Patents"); and

**WHEREAS**, Licensor is willing to grant worldwide exclusive license rights in the Patents to APAC and APAC in turn, desires to acquire all substantial rights in and to the Patents; and





V:03-05-2008                    Page 1 of 12

EXHIBIT A, p. 182



2. <u>**ROYALTIES AND OTHER PAYMENTS**</u>

2.1.   <u>Royalty Payment</u>. In consideration of the rights assigned to APAC hereunder and upon Acceptable Completion, as determined by APAC in its sole and absolute discretion, of the Investigation Period, APAC shall pay Licensor a continuing royalty equal to ▮▮▮▮▮ of the Net Proceeds (as defined below).

V.03-05-2008                    Page 2 of 12



EXHIBIT A, p. 183



V.03-05-2008                                    Page 3 of 12



V.03-05-2008                    Page 4 of 12

V.03-05-2008                    Page 5 of 12



5. **ENFORCEMENT OF PATENT RIGHTS**

5.1.    Good Faith.  Subject to the terms and conditions of this Agreement, APAC will use its good faith efforts to pursue licensing and enforcement of the Patents at its expense. APAC will attempt to negotiate licenses with companies that APAC believes may be infringing the Patents. Notwithstanding any of the foregoing, APAC may at any time elect not to pursue licensing or enforcement of any of the Patents if APAC determines, in its reasonable and sole discretion, that any such pursuit would be commercially unreasonable or otherwise unlawful or illegal.

5.2.    Enforcement Litigation.  APAC may, in its sole judgment, decide to institute enforcement actions against certain or all of the companies that APAC believes are infringing the Patents. APAC shall have the exclusive right to bring suit to enforce the Patents.



EXHIBIT A, p. 187



V.03-05-2008                    Page 7 of 12



V.03-05-2008                                   Page 8 of 12



## 8. GOVERNING LAW AND CONSENT TO JURISDICTION

8.1.  Choice of Laws.  This Agreement shall be governed by and construed under applicable federal law and the laws of the State of California, excluding any conflict of law provisions.  APAC and Licensor each irrevocably consent to the exclusive jurisdiction of any California state or federal court sitting in the Central District of California, over any suit, action or proceeding arising out of or relating to this Agreement.  APAC and Licensor hereby waive personal service of any summons, complaint, or other process in any action in any California state or federal court sitting in the Central District of California, and agree that all service thereof may be made by (i) certified or registered mail, return receipt requested, to the other Party's address identified in the opening paragraph of this Agreement; or (ii) by such other method authorized by the California Long Arm Statute.

## 9. CONFIDENTIALITY

9.1.  All information provided pursuant to this Agreement, including without limitation (but not including the existence of this Agreement), the terms of this Agreement, shall be regarded as confidential information ("Confidential Information").  The Parties agree that, other than as required by law, they shall not disclose any Confidential Information and shall use the Confidential Information only for the purposes set forth herein.  Either Party may disclose Confidential Information to its financial and legal advisors subject to confidentiality obligations at least as stringent as those provided in this Agreement.  Licensor acknowledges that APAC's parent company, Acacia Research Corporation ("Acacia"), is a publicly traded company, and that Acacia may be required to publicly disclose the signing of this Agreement, as well as certain terms of the Agreement.  Confidential Information shall not include information that:

(a)  was already known, otherwise than under an agreement of secrecy or non-use, at the time of its disclosure;

(b)  has passed into the public domain prior to or after its disclosure, otherwise than through any act or omission attributable to principals, officers, employees, consultants or agents of the receiving Party; or



EXHIBIT A, p. 190

(c) was subsequently disclosed, otherwise than under an agreement of secrecy or non-use, by a third party that had not acquired the information under an obligation of confidentiality.

9.2. Preservation of Privilege. The Parties agree that they may disclose Confidential Information in furtherance of their common legal interest in exploring business opportunities involving the Patents, including litigation involving one or more of such Patents. Such Confidential Information may be subject to the attorney-client privilege, work product doctrine or other applicable privilege. The Parties understand and agree that it is their desire, intention and mutual understanding that the sharing of such Confidential Information is not intended to, and shall not, waive or diminish in any way the confidentiality of such material or its continued protection under the attorney-client privilege, work product doctrine or other applicable privilege. All Confidential Information provided by a Party that is entitled to protection under the attorney-client privilege, work product doctrine or other applicable privilege shall remain entitled to such protection under these privileges, this Agreement, and under the joint defense doctrine. Nothing in this Section shall be interpreted to mean that a Party hereto would be prevented from using Confidential Information in a legal proceeding against the other Party hereto based upon a dispute arising out of this Agreement; provided that the other Party has been notified in advance of such use or disclosure and been afforded sufficient opportunity to seek and obtain confidential treatment by the court or other entity having jurisdiction over the matter at hand. Upon termination of this Agreement, APAC agrees to return to Licensor all documents, electronic or otherwise, relating to the Patents received from Licensor.

10. **MISCELLANEOUS**



10.3. Entire Agreement. This Agreement constitutes the entire understanding of the parties with respect to its subject matter and may not be modified or amended, except in writing by the Parties. Nothing in this Agreement, whether expressed or implied, shall be construed to give any person (other than the Parties and their respective permitted successors and assigns), any legal or equitable right, remedy or claim under or in respect of this Agreement or any covenants, conditions or provisions contained herein, as a third party beneficiary or otherwise.



V.03-05-2008                          Page 10 of 12



EXHIBIT A, p. 191

IN WITNESS WHEREOF, the Parties have executed this Agreement on the Effective Date.

PROPHET PRODUCTIONS, LLC

By: _____

Print Name: Elijah Chancelor

Title: President

Date: 2/26/2009

ACACIA PATENT ACQUISITION LLC

By: _____

Print Name: Dooyong Lee

Title: Executive Vice President

Date: 2/26/09

V.03-05-2008                    Page 11 of 12

EXHIBIT A, p. 192



EXHIBIT A, p. 193

# EXHIBIT D

**Graziano, Jojo**

| | |
|---|---|
| **From:** | Dooyong Lee <IMCEAEX-_O=ACACIA+20RESEARCH+20CORPORATION_OU=FIRST+20ADMINISTRATIVE+20GROUP_CN=RECIPIENTS_CN=DLEE@acaciares.com> |
| **Sent:** | Thursday, February 26, 2009 5:40 PM |
| **To:** | 'Elijah@prophetpro.com' |
| **Cc:** | Amy Pearson; Kimberly Bode; Debra Garay |
| **Subject:** | FW: Scanned Docs |
| **Attachments:** | Document.pdf |

Elijah,

Attached is a PDF of the Acceptable Completion notice, which is being mailed to you.

Regards,

_____

Dooyong Lee
Executive Vice President
Acacia Patent Acquisition LLC
500 Newport Center Drive, 7th floor
Newport Beach, CA 92660
Office: 949-480-8323
Fax: 949-480-8379
www.acaciatechnologies.com

-----Original Message-----
From: HP Scanner
Sent: Thursday, February 26, 2009 5:32 PM
To: Dooyong Lee
Subject: Scanned Docs


This document was digitally sent to you using an HP Digital Sending device.



February 26, 2009


Elijah Chancelor
President
Prophet Productions, LLC
206 E. 83rd Street #2E
New York, NY 10028

Dear Elijah:

Pursuant to Sections 1.2 and 1.3 of the Exclusive License Agreement, we have performed our due diligence investigation and have determined that the Patents are acceptable. Therefore, the Agreement shall continue with full force and effect.

We look forward to working with you.


Regards,

Dooyong Lee
Executive Vice President

## PROOF OF SERVICE

STATE OF CALIFORNIA           )
                              )   ss
COUNTY OF ORANGE              )

I am employed by Stradling Yocca Carlson & Rauth in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is: 660 Newport Center Drive, Suite 1600, Newport Beach, CA 92660-6422. On March 25, 2015, I served the within document(s): **DECLARATION OF DOOYONG LEE SUPPORTING DEFENDANT'S REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE UNDER CODE OF CIV. PROC. §§ 396B, 397 AND REQUEST FOR ORDER THAT PLAINTIFF PAY DEFENDANT'S REASONABLE EXPENSES AND ATTORNEY'S FEES IN THE AMOUNT OF $9,515**

| | |
|---|---|
| ☒ | **By overnight delivery.** I enclosed the above-referenced document(s) in an envelope or package designated by an overnight delivery carrier with delivery fees paid or provided for and addressed to the person(s) at the address(es) listed below. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier. |
| | **By electronic service.** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the above-referenced document(s) to be sent to the person(s) at the electronic address(es) listed below. |

| | |
|---|---|
| Brian S. Kabateck, Esq.<br>Joshua H. Haffner, Esq.<br>KABATECK BROWN KELLNER LLP<br>644 South Figueroa Street<br>Los Angeles, CA 90017<br>Telephone: (213) 217-5000<br>Facsimile: (213) 217-5010<br>Email: bsk@kbklawyers.com<br>Email: jhh@kbklawyers.com | Attorneys for Plaintiff PROPHET PRODUCTIONS |

     I declare that I am employed in the office of a member of the bar of this court whose direction the service was made. I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on March 25, 2015, at Newport Beach, California.

_____
Jojo Graziano

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-1-
PROOF OF SERVICE
LITIOC/2114047v3/101023-0051

EXHIBIT A, p. 197