Brian S. Kabateck, SBN 152054
(bsk@kbklawyers.com)
Joshua H. Haffner, SBN 188652
(jhh@kbklawyers.com)
Levi M. Plesset, SBN 296039
(lp@kbklawyers.com)
**KABATECK BROWN KELLNER LLP**
644 South Figueroa Street
Los Angeles, California 90017
Tel: (213) 217-5000
Fax: (213) 217-5010

Attorneys for Plaintiff Prophet Productions, LLC

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| PROPHET PRODUCTIONS, a New York Corporation,<br><br>Plaintiff,<br>v.<br><br>ACACIA PATENT ACQUISITION, LLC, a Delaware Limited Liability Company, and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE No. BC561469<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1. **BREACH OF CONTRACT;**<br>2. **BREACH OF COVENANT OF GOOD FAITH & FAIR DEALING; AND**<br>3. **FRAUD**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Prophet Productions, LLC (hereinafter "Plaintiff" or "Prophet"), makes the following allegations based upon information and belief and brings this action for damages against Defendant Acacia Patent Acquisition, LLC (hereinafter "Defendant" or "APAC") demanding a trial by jury.

## NATURE OF THE ACTION

1. Plaintiff and Defendant entered into a valid contract whereby Defendant was granted exclusive rights to license and enforce Plaintiff's patents on his behalf. By the terms of the contract, Plaintiff and Defendant would share in any royalties earned from licensing or any recovery gained from enforcing the patents.

2. Plaintiff provided defendant with a list of specific infringers which Defendant promised to include in the entities it would pursue to enforce Plaintiff's patent rights. This was a

- 1 -
FIRST AMENDED COMPLAINT

false and fraudulent promise, which concealed Defendant's true intentions. Defendant had already entered into, or intended to enter agreements with some of the infringing entities on Plaintiff's list to allow usage of Plaintiff's patents, contrary to Defendant's agreement with Plaintiff.

3. Plaintiff subsequently learned that Defendant had licensed Plaintiff's patents to various companies, entities and individuals without informing Plaintiff and without sharing in the royalties on the licenses, breaching the terms of the contract.

4. Plaintiff also learned that Defendant failed to dutifully prosecute various patent infringers, breaching the express terms of the contract as well as the implied covenant of good faith and fair dealing.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the entire action by virtue of the fact that this is a civil action wherein the matter in controversy, exclusive of interest and costs, exceeds the jurisdictional minimum of the Court. The acts and omissions complained of in this action took place in the State of California, the contract was entered into in California and contains a California choice of venue and choice of law provision, and Defendant resides in the state of California.

## PARTIES

6. Plaintiff Prophet Productions, LLC is, and at all times relevant to this Complaint was, a Limited Liability Company existing under the laws of the state of New York, whose principal place of business is New York, New York.

7. Plaintiff is informed and believes and based thereon alleges that Defendant Acacia Patent Acquisition, LLC is, and at all times relevant to this Complaint was, a limited liability company organized and existing under the laws of the state of Delaware, whose principal place of business is Newport Beach, California.

8. Plaintiff is currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants sued herein under the fictitious names Does 1 through 50, inclusive, and therefore, sues such defendants by such fictitious names. Plaintiff will amend this complaint to allege the true names and capacities of said fictitiously named defendants when their true names and capacities have been ascertained. Plaintiff is informed and believes and

thereon alleges that each of the fictitiously named Doe defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by plaintiff.

9. Plaintiff is informed, believes, and thereon alleges that all defendants, including the fictitious Doe defendants, were at all relevant times acting as actual agents, conspirators, ostensible agents, partners and/or joint venturers and employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, joint venture, conspiracy and/or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their co-defendants; however, this allegation is pleaded as an "alternative" theory wherever not doing so would result in a contradiction with other allegations.

10. As an alternative theory, Plaintiff is informed and believes, and on that basis alleges, that Defendants are alter egos of each other. Plaintiff is informed and believes, and on that basis alleges, that there is common control over Defendants, and they operate pursuant to a common business plan. There is unity of interest among defendants.

11. The alternative alter-ego relationship among the defendants should be recognized to prevent an injustice. If the alter-ego relationship among defendants is not recognized, an inequity will result because an entity responsible for wrongdoing will be shielded from liability. The alter ego relationship should be recognized to ensure effective injunctive and declaratory relief, so that the wrongful practices alleged herein are not relocated to an affiliated company. If defendants were permitted to avoid an injunction by relocating the misconduct, an inequity would result.

## FACTUAL ALLEGATIONS

12. Plaintiff is the sole and exclusive owner of U.S. Patents Numbers 1) 6,028,626; 2) 5,666,157; and 3) all related patent applications, corresponding foreign patents and foreign patent applicants, and all continuations, continuations in part, divisions, extensions, renewals, reissues and re-examinations relating to all inventions thereof (hereinafter collectively referred to as "the Patents").

**The Agreement**

13. On February 29, 2009, Plaintiff and Defendant entered into a valid contract entitled the Exclusive License Agreement (hereinafter "the Agreement").

14. The Agreement granted Defendant with worldwide exclusive license rights to the Patents, including the right to sublicense the Patents and enforce of the Patents.

15. In consideration for these exclusive rights, Defendant agreed to pay Plaintiff fifty percent of the net proceeds from the licensing of the Patents and recovery gained from enforcing the Patents after costs.

16. The Agreement requires APAC to use good faith efforts to pursue licensing and enforcement of the Patents.

**Unpaid Royalties**

17. Pursuant to the Agreement, Defendant is obligated to provide Plaintiff with a report of Total Recoveries. Total Recoveries is represented by all amounts received by Defendant from the licensing and enforcement of the Patents.

18. Plaintiff identified numerous companies that infringed the Patents.

19. Between 2010 and 2012, Defendant licensed all of the patents from all of its inventors and patent owners for which it had exclusive rights (hereinafter the "Patent Portfolio"), including the Patents, to various corporations, business entities and/or individuals including Microsoft, Samsung and Oracle. Plaintiff is informed and believes the cumulative amount of the licensing deals exceeded $100 million.

20. Defendant did not inform Plaintiff that it had licensed its Patent Portfolio, including the Patents, to the various entities and individuals including Samsung. Defendant also did not inform Plaintiff that it had licensed its Patent Portfolio for in excess of $100 million.

21. In 2013, Plaintiff discovered that Microsoft had been infringing the Patents. Plaintiff inquired Defendant about enforcing the patent infringement against Microsoft, but Defendant not make any affirmative, reasonable or good faith steps to enforce the patent infringement. Defendant did not inform Plaintiff of the previous licensing deal with Microsoft.

22. Upon Plaintiff's own investigation, Plaintiff learned that Defendant had licensed its Patent Portfolio to various corporations, including Microsoft, Samsung, Oracle and other entities. After learning of the surreptitious licensing deals, Plaintiff understood why Defendant failed to reasonably pursue infringement activities against Microsoft – because they had already licensed the

1 Patents to Microsoft, among others.

2 23. Defendant has not paid Plaintiff any royalties earned from licensing its Patent
3 Portfolio including the Patents.

4 24. Upon information and belief Plaintiff alleges that Defendant's conduct of failing to
5 inform its patent owners of licensing deals and failing to pay amounts due as a result of licensing
6 deals is part of a policy and practice impacting the proper allocation of income to many of its clients,
7 including Plaintiff.

**Unenforced Patent Infringements**

9 25. In 2006, Plaintiff began making independent investigations into those infringing the
10 Patents and compiled a list of those he believed to be infringing on the Patents. When Plaintiff
11 entered into the Agreement with Defendant in 2009, Defendant was granted access to this
12 information. Defendant has since utilized the information to assist in determining which companies
13 against which to pursue enforcement actions.

14 26. In 2010, Defendant created the subsidiary Criminal Activity Surveillance LLC
15 (hereinafter "CAS") with the intention of assigning the Patents to CAS. Defendant planned to sue
16 patent infringers through this entity and, indeed, proceeded to do so.

17 27. However, Defendant failed to properly and timely assign the Patents to CAS.

18 28. Between 2011 and 2012, Defendant, as CAS, sued eleven companies and sent notice
19 letters of imminent enforcement lawsuits to fifteen other companies for infringing the Patents.

20 29. In 2013, with three defendants remaining in the case, it was dismissed for lack of
21 standing on the ground that Defendant had failed to properly and timely assign the Patents to CAS.
22 (*Criminal Activity Surveillance, LLC v. ADT Sec. Servs., Inc., et al.*, No. 6:11-cv-494 (E.D. Tex.
23 Mar. 20, 2013).) Defendant unreasonably and improperly ceased pursuing enforcement against the
24 remaining fifteen companies to which it sent notice letters, other than one.

25 30. Plaintiff has been damaged as a result of Defendant's actions.

26 31. Upon information and belief Plaintiff alleges that Defendant's conduct of failing to
27 reasonably and diligently enforce patents is part of a policy and practice impacting the good faith
28 duties applicable to many of its clients.

- 5 -
FIRST AMENDED COMPLAINT

EXHIBIT A, p. 387

## FIRST CAUSE OF ACTION

### (Breach of Contract)

32. Plaintiff alleges and incorporates by reference all allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

33. Plaintiff and Defendant entered into a valid and enforceable written contract whereby Plaintiff granted Defendant exclusive license rights in consideration for royalty payments equal to fifty percent of Net Proceeds Defendant gained from licensing and enforcement of the Patents.

34. A copy of the "Exclusive License Agreement" (hereinafter "Agreement") will be provided to the Court, after entry of an appropriate protective order in order to preserve the agreed to confidentiality of the agreement.

35. Defendant breached the Agreement by failing to provide Plaintiff of any reporting of recovery from licensing its Patent Portfolio gained on the Patents according to the terms set forth in Section 2.3 of the Agreement.

36. Defendant breached the Agreement by not providing Plaintiff with certain royalty payments earned on the Patents pursuant to the terms set forth in Section 2.1 of the Agreement.

37. Defendant additionally breached the express terms of the contract by failing to exercise good faith efforts to pursue licensing and enforcement of the Patents pursuant to Section 5.1 of the Agreement. Defendant has otherwise failed to justify its discretionary election to avoid enforcement because it would be commercially unreasonable or otherwise unlawful or illegal.

38. Plaintiff faithfully performed all obligations due under the contract as required under the terms, except to the extent performance may have been excused.

39. As a direct, proximate, and legal result of Defendant's breach of the Agreement, Plaintiff has been, and continues to be, damaged in an amount in excess of the jurisdictional limits of this Court, including but not limited to the deprivation of royalty payments the loss of benefits due under the contract, consequential damages and other fees and expenses and costs to be proven at trial.

40. Plaintiff has also sustained other economic losses as a direct, proximate, and legal result of Defendant's conduct, in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

41. Plaintiff alleges and incorporates by reference all allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

42. The Agreement entered into between Plaintiff and Defendant was a valid contract and contained an implied covenant of good faith and fair dealing as well as an express covenant of good faith and fair dealing, whereby Defendant agreed to perform its obligations under the Agreement in good faith, to deal fairly with Plaintiff, and not to unreasonably deprive Plaintiff of the benefits due under the Agreement.

43. Plaintiff faithfully performed all obligations due under the contract as required under the terms, except to the extent performance may have been excused.

44. Plaintiff provided Defendant with exclusive rights to the Patents. In doing so, Plaintiff gave up the right to independently license the Patents to any interested companies.

45. Defendant breached its implied covenant with Plaintiff when it licensed the Patents through the Patent Portfolio without informing Plaintiffs as to the royalties to be earned on them. Instead, Defendant had concealed that Plaintiff was eligible for royalties from the Patent Portfolio licensing deals it made with Microsoft, Samsung, Oracle and other corporations, entities and individuals.

46. Defendant further breached its implied and express covenants of good faith and fair dealing with Plaintiff when it failed to pay Plaintiff the royalties earned on the Patents from licensing its Patent Portfolio. Defendant did so despite knowing that it had gained exclusive rights of the Patents, and Plaintiff had consequently curtailed its ability to license the Patents to other companies.

47. Defendant further breached its implied and express covenants with Plaintiff when it failed to exercise good faith efforts to enforce the Patents when it had the exclusive right to do so. Plaintiff provided Defendant with exclusive rights to seek enforcement of the Patents. Although Plaintiff made independent investigations, found good basis to enforce the Patents' rights against various patent infringers, and provided this information to Defendant, Defendant nevertheless failed to exercise any good faith efforts to enforce these infringements. Further, Defendant severely

restricted its pursuit of a second set of lawsuits after the mistake was found and, in bad faith, only pursued enforcement against only one of the intended infringers when there were many others marked as next targets for enforcement and to which infringement notice letters had been sent.

48. Defendant further breached its implied covenant with Plaintiff when it failed to justly exercise its sole discretion to enforce the Patents. The implied covenant of good faith and fair dealing attaches a duty on Defendant to exercise that discretionary power in good faith. While Defendant maintained the exclusive right and the sole discretion to enforce the Patents, Defendant exercised its discretionary power against the purpose reasonably contemplated by the parties at the time of agreement.

49. Without reasonable basis for doing so, and with full knowledge and/or conscious disregard of the consequences, Defendant fails and refuses to act in good faith or act fairly toward Plaintiff, and Defendant, in bad faith, fails and refuses to perform its obligations under the Agreement.

### THIRD CAUSE OF ACTION
#### (Fraud/Fraudulent Concealment)

50. Plaintiff alleges and incorporates by reference all allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

51. Defendant misrepresented and fraudulently concealed multiple facts and made false promises to Plaintiff, with the intent to deceive Plaintiff and with the intent that Plaintiff would rely upon those misrepresentations and omissions by entering into the Agreement Exclusive License Agreement on February 26, 2009.

52. Defendant, by way of Executive Vice President Dooyong Lee, in the weeks prior to the execution of the Exclusive License Agreement on February 26, 2009, misrepresented to Plaintiff it would pursue patent infringers, including but not limited to those with which it entered or planned to enter into patent portfolio agreements, that were on the list that Plaintiff provided to Defendant. This was a false and fraudulent misrepresentation because Defendant had, or intended to, at the time, provide rights to some of the entities on the list of infringers allowing them to use the Patents. Defendant concealed from Plaintiff that it had and intended to grant rights the Patents to entities on Plaintiff's list and would thus be unable to pursue those entities for infringing the Patents.

53. Defendant, in the Agreement of February 26, 2009, through Mr. Lee, also misrepresented it would pay Plaintiff royalties if Defendant licensed or allowed another entity to use Plaintiff's Patents. This was a false and fraudulent misrepresentation because Defendant had bulk agreements granting rights to multiple patent portfolios, and intended to enter into future bulk agreements, with corporations covenenting not to sue them for using the Patents, and not paying anything to Plaintiff relating to the covenant not to sue.

54. Among the entities that were on Plaintiff's list of infringers, and which Defendant entered into covenants not to sue or pursue for infringement, were Cisco Systems, Inc. and Samsung Electronics Co., Ltd.

55. At the time the Agreement was entered into in February 2009, Defendant through Mr. Lee also misrepresented its willingness to reasonably and diligently perform these activities. Defendant did not have the capabilities represented and did not reasonably and in good faith perform these activities.

56. Defendant also misrepresented its willingness to share in value received from prospective licensing deals in connection with the Patents. Defendant did not intend to and did not inform Plaintiff of licensing or covenant not to sue deals involving the Patents. From February 2009 through the present, Defendant failed to inform Plaintiff of licensing agreements with various entities and individuals for which Plaintiff is entitled to remuneration, including, but not limited to, Oracle Corporation on December 30, 2009 and on March 12, 2012 for $25 million; Microsoft Corporation in 2010 for $40 million; Samsung Electronics Co., Ltd. in 2011 for $45 million; Cisco Systems, Inc. in 2012 for $36 million, and SK Hyunix, Inc. thereafter for an unknown amount.

57. At the time that Plaintiff and Defendant entered into the February 26, 2009 agreement, Defendant intended to engage in patent portfolio licensing agreements, which it would characterize the rights to the Patents as a covenant not to sue, with major corporations, and to include in that portfolio Plaintiff's patents, although it had no intention on informing Plaintiff of the agreements nor providing Plaintiff remuneration therefor.

58. Defendant and counsel it retained to prosecute the infringement of the Patents, Sheridan Ross, were informed that Defendant had failed to properly and timely assign the Patents to

CAS, upon the filing of a motion to dismiss on or around February 22, 2013. (*Criminal Activity Surveillance, LLC v. ADT Sec. Servs., Inc., et al.*, No. 6:11-cv-494 (E.D. Tex. Mar. 20, 2013).) During a phone call on or around March 8, 2013, Rob Brunelli of Sheridan Ross informed Plaintiff of Defendant's failure to assign the Patents to CAS which lead to the filing of the motion to dismiss. Plaintiff followed up by contacting Defendant, on or around March 15, 2013, and spoke with Holly Hernandez, employee of Defendant. Ms. Hernandez told Plaintiff not to be concerned about the motion to dismiss, characterizing it as litigation strategy which would not have an impact on the infringement prosecution case. On or around March 20, 2013, *Criminal Activity Surveillance, LLC v. ADT Sec. Servs., Inc., et al.*, No. 6:11-cv-494 (E.D. Tex. Mar. 20, 2013) was dismissed pursuant to the failure to assign the Patents to CAS.

59. Further, Defendant actively concealed its intention to engage in, and execution of, patent portfolio licensing agreements granting rights to the Patents to major corporations including, but not limited to, Oracle Corporation on December 30, 2009 and on March 12, 2012 for $25 million; Microsoft Corporation in 2010 for $40 million; Samsung Electronics Co., Ltd. in 2011 for $45 million; Cisco Systems, Inc. in 2012 for $36 million, and SK Hyunix, Inc. thereafter for an unknown amount.

60. Defendant used Plaintiff's list and information therein in determining which companies against which to pursue enforcement actions, including as "Tier 1 Companies – Companies making and/or selling complete video-analytic solutions." Out of the first ten companies that Defendant brought suit on Plaintiff's behalf, six of ten were identified as Tier 1 Companies on Plaintiff's list. Also identified as Tier 1 Companies were Cisco and Samsung, two of the companies that Defendant granted rights to the Patents absent any disclosure to Plaintiff thereof or remuneration therefor.

61. As a further example, Plaintiff was in communication with Rob Brunelli and Patricia Ho of Sheridan Ross, as well as Holly Hernandez of Defendant, via email on or around September 15, 2013. Plaintiff provided detailed information to Rob Brunelli of Microsoft's infringement of the Patents which provided the video analytics for New York City. On or around September 19, 2013, Mr. Brunelli responded that he believed a lawsuit was not prudent due to governmental immunity.

1  Yet on a conference call in late 2011 or early 2012, Rob Brunelli represented his interest in serving a
2  FOIA request upon New York City to determine its video analytics system in order to pursue
3  infringement enforcement of the Patents. Moreover and prior to September of 2013, Plaintiff and
4  Rob Brunelli discovered contracts implicating the Patents between BRS Labs and the MTA in San
5  Francisco and Port Authority in New York City, and filed a lawsuit for infringement in October
6  2013. In or around late September, 2013, Plaintiff met with Holly Hernandez and asked if the
7  reason Defendant refused to pursue infringement against Microsoft was because of a licensing deal it
8  had engaged in with Microsoft in or around September, 2010. In response thereto, Ms. Hernandez
9  sated that the answer was "above her pay grade," and Plaintiff was provided no further answer.
10 Similarly, Plaintiff was in discussions with Amy Pearson, employee of Defendant, throughout 2010
11 and 2011, regarding the pursuit of infringement prosecution against Samsung, yet Defendant never
12 disclosed to Plaintiff that Defendant entered into a patent portfolio licensing agreement with
13 Samsung in or around March of 2011.

14       62.     Defendant, by way of Executive Vice President Dooyong Lee, in the weeks prior to
15 the execution of the Exclusive License Agreement on February 26, 2009, misrepresented
16 Defendant's capabilities and expertise in taking assignment of, licensing, and enforcing patents.

17       63.     Plaintiff reasonably relied upon Defendant's representations and entered into the
18 Agreement, thereby granting exclusive rights to Defendant for the licensing and enforcement of
19 Plaintiff's patents. Plaintiff further reasonably relied upon representations made by Defendant and
20 counsel it hired to prosecute infringement of the Patents regarding the motion to dismiss by omitting
21 from taking actions to prevent such dismissal and its repercussions. Indeed, after the dismissal,
22 Defendant began settling Plaintiff's infringement cases for much less than had been anticipated due
23 to the assignment error. Plaintiff further relied on Defendant's representations regarding its decision
24 to forego patent prosecution against major corporations such as Microsoft, Samsung, and Oracle.
25 Only later did Plaintiff come to learn that Defendant had engaged in patent portfolio licensing
26 agreements with these corporations.

27       64.     Plaintiff has sustained economic losses as a direct, proximate, and legal result of
28 Defendant's conduct, in an amount to be proven at trial, including but not limited to Plaintiff's

ability to license and enforce its patents for reasonable value.

**WHEREFORE,** Plaintiffs pray for judgment against Defendant, and each of them, as follows:

1. For general, special and consequential damages according to proof;
2. For punitive and exemplary damages;
3. For restitution and disgorgement;
4. For unjust enrichment;
5. For attorney's fees and costs incurred, as allowed by law;
6. For costs of suit herein;
7. For pre-judgment and post judgment interest according to proof;
8. For injunctive relief;
9. For such other and further relief as the Court deems just and proper.

DATED: September 11, 2015

**KABATECK BROWN KELLNER LLP**

By: _____
Levi M. Plesset
Attorney for Plaintiffs

- 12 -
FIRST AMENDED COMPLAINT

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all claims so triable.

DATED: September 11, 2015                    **KABATACK BROWN KELLNER LLP**

By: _____
Levi M. Plesset
Attorneys for Plaintiff

---

DEMAND FOR JURY TRIAL

PROOF OF SERVICE
Case No. BC561469

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 644 S. Figueroa Street, Los Angeles, California 90017.

On **September 11, 2015**, I served the foregoing document described as: **FIRST AMENDED COMPLAINT** demurrer on the interested parties in the action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

| Attorney | Defendant |
|---|---|
| MARC J. SCHNEIDER, TRAVIS P. BRENNAN JESSICA L. MULLEN STRADLING YOCCA CARLSON & RAUTH, P.C. 660 Newport Center Drive, Suite 1600 Newport Beach, CA 92660-6422 MSchneider@SYCR.com TBrennan@SYCR.com JMullen@SYCR.com CC: cjones@SYCR.com JGraziano@SYCR.com | Telephone: (949) 725-4000 Facsimile: (949) 725-4100 |

__X__ **BY ELECTRONIC SERVICE:** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the above-referenced document(s) to be sent to the person(s) at the electronic addressees) listed above.

__X__ **[STATE]** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

**Executed on September 11, 2015, at Los Angeles, California.**

_Maisha McCray_
Maisha McCray

SERVICE LIST